The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT TACOMA

T-MOBILE USA, INC., a Delaware
Corporation,

               Plaintiff,

    v.

SHERMAN TERRY, et al.,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)

No. 3:11-cv-5655-RBL

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST DEFENDANT GEORGE COLLETT**

     **THIS MATTER** is before the Court on Plaintiff, T-Mobile USA, Inc.'s ("T-Mobile") Motion for Partial Summary Judgment Against Defendant George Collett ("Motion"). [Dkt. #134]. T-Mobile contends that there are no material facts in dispute and summary judgment should be granted in T-Mobile's favor on its Federal Trademark Infringement and False Advertising (Count One), Trafficking in Computer Passwords (Count Three), Unauthorized Access With Intent to Defraud (Count Four), Theft of Computer Data (Count Five), Unauthorized Access (Count Six), Unfair Competition, O.C.G.A. §23-2-55 (Count Eight), Civil Conspiracy (Count Nine), Georgia Computer Systems Protection Act, O.C.G.A. §16-9-93 (Count Thirteen), and Deceptive Trade Practices, O.C.G.A. §10-1-372 (Count Fourteen) claims (collectively, T-Mobile's "Claims"). The Court has reviewed the case file, considered testimony, and heard argument for and against the motion, and being otherwise duly and fully advised in the premises, . For the following reasons, the Court GRANTS the Motion for Partial Summary Judgment Against Defendant George Collett and enters a permanent injunction.

The Court makes the following findings:

This Court has jurisdiction over the parties and the claims set forth in T-Mobile's Amended Complaint.

### A.     T-Mobile's Business Model

T-Mobile has the right to use and enforce said rights in the standard character mark T-Mobile and a stylized T-Mobile Mark (collectively, the "T-Mobile Marks"), as depicted below:



T-Mobile uses the T-Mobile Marks on and in connection with telecommunications services and products, which are provided nationwide.

T-Mobile's prepaid programs provide T-Mobile customers with wireless service without a term contract, deposit or activation fee.  To obtain service, customers purchase a T-Mobile phone from T-Mobile or from an authorized T-Mobile dealer or retailer, pay for the first month of service, and then pay a monthly fee in advance for their service on T-Mobile's wireless network for that month.  T-Mobile subsidizes each handset, or, in other words charges its customers less for the prepaid phone than it cost T-Mobile to purchase it.  T-Mobile recoups the loss over time through the sale of T-Mobile services.  Along with the phone, customers receive a SIM card, which is inserted in the handset.  The SIM card allows the phone to access the T-Mobile wireless network, and to track and regulate airtime usage.  Both T-Mobile SIM cards and handsets carry the T-Mobile Mark.

The SIM card provides access to T-Mobile's wireless network only if it is properly activated, which can only be accomplished through a confidential and proprietary website or through a T-Mobile customer service representative.  To activate a T-Mobile SIM card, an authorized T-Mobile dealer must enter a confidential activation code into T-Mobile's secure activation website or orally give the code and customer-related information over the phone to the T-Mobile customer service representative.  Upon receiving all of the required information, T-Mobile then activates the SIM card, and the customer may use the SIM card to access the T-Mobile wireless network.

T-Mobile's post-paid business accounts allow businesses to purchase and activate numerous phone lines from T-Mobile on a post-paid basis, usually with unlimited airtime and a variety of services.  These activations can only be legitimately made in T-Mobile's computer systems by a T-Mobile representative or authorized T-Mobile dealer.

**B.**     **Defendant's Illegal Conduct**

Defendant and his co-conspirators engaged in unlawful business practices involving the unauthorized use of T-Mobile's trademarks, the unlawful acquisition, purchase and sale of T-Mobile SIM cards and airtime, the fraudulent activation of those SIM cards for use on T-Mobile's prepaid services, the illegal procurement, use, and sale of proprietary codes, identifiers, and methods for defrauding T-Mobile out of airtime and services, the bulk purchase and resale of T-Mobile Phones, computer unlocking of T-Mobile Prepaid Phones, alteration of proprietary software computer code installed in the Phones for T-Mobile, and trafficking of the Phones and SIM cards for profit.  Defendant conspired with others to acquire and resell T-Mobile prepaid handsets in bulk to their financial benefit.  Bulk purchase and resale of T-Mobile handsets in order to profit from the subsidy that was intended to benefit T-Mobile customers violates T-Mobile's rights.  T-Mobile's rights are similarly violated by the purchase and resale of large quantities of new T-Mobile phones by a entity that is not an authorized dealer of T-Mobile products.

Defendants also acquired large quantities of T-Mobile SIM cards and, through fraudulent means activated those SIM cards on T-Mobile's network.  There is no legitimate reason for anyone to buy or sell bulk quantities of T-Mobile SIM cards.  Defendant and his co-conspirators utilize improperly-acquired confidential codes to hack into T-Mobile's proprietary database with the intent of defrauding T-Mobile and stealing airtime and other services for their own use and for sale.  Defendant then affirmatively advertised to the public that the SIM cards for sale, which were loaded with illegally-acquired airtime minutes, are authentic T-Mobile SIM cards properly activated for use on T-Mobile's wireless service.  Mr. Collett admits to this activity.  He testified that he sold T-Mobile Phones and SIM cards on eBay and Craigslist, purchased T-Mobile SIM cards, pin numbers and activation codes, posted a sign in his store saying "unlimited T-Mobile

service $50 a month" and falsely advertised that he was a T-Mobile dealer.  Defendant, who is not an authorized T-Mobile dealer, has also improperly advertised that his store is a T-Mobile store and that his store has an unlimited T-Mobile service plan for $45 per month without a credit check.  These representations were false, as George Collett's store and the service plans he offered were not sanctioned by T-Mobile.

### C.   Harm Caused by Defendant's Schemes

Defendant's actions have substantially harmed T-Mobile by, among other things: defrauding T-Mobile into providing airtime without receiving compensation; causing T-Mobile to incur the cost of paying a third-party carrier for roaming charges and overseas calls made using the fraudulently-activated SIM cards; depriving T-Mobile of the opportunity to earn profits by providing service to legitimate T-Mobile consumers; stealing handset subsidies provided for legitimate customers; and tarnishing T-Mobile's reputation.

The fraudulent activation of wireless service accounts by Defendant and his co-conspirators irreparably harms T-Mobile because it deprives T-Mobile of the means to control the quality of its product.  Further, purchasers of Defendant's "unlimited" service blamed T-Mobile when their service was deactivated as a fraudulent account.  As a result, T-Mobile's reputation is further harmed by Defendant's conduct.

Similarly, Defendant's unauthorized resale of T-Mobile SIM cards and handsets—which still bear the T-Mobile Marks and under the false indication that he was an authorized T-Mobile dealer—resulted in calls by confused and angry consumers to T-Mobile's customer relations department, for which T-Mobile incurs costs.  T-Mobile's reputation is further damaged when T-Mobile is unable to assist those consumers because Defendant made false representations to consumers that they paid for a particular level or amount of T-Mobile service or that they received a genuine T-Mobile product.  These problems do not exist for customers who receive legitimate T-Mobile products and services.

The conduct of Defendant and his co-conspirators has resulted in the dilution of the T-Mobile Marks, substantial harm to T-Mobile's business reputation and goodwill and a greater

likelihood of confusion, mistake, and deception as to the source of origin of T-Mobile products unlawfully sold by the Defendant and his co-conspirators and as to the relationship between T-Mobile and Defendant.

Moreover, the use and trafficking of stolen activation codes and SIM cards over the internet and throughout the United States, and fraudulent activation of the SIM cards and business accounts, substantially affects interstate commerce.  T-Mobile provided evidence that it expended over $18,125.88 in investigating Defendant and taking corrective measures to prevent further fraudulent conduct.

In sum, the Court finds that T-Mobile was substantially harmed by Defendant's actions.

## SUMMARY JUDGMENT STANDARD

The United States Supreme Court has held that the: "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  To prevail on summary judgment, T-Mobile, as the movant, need only show that there is no genuine issue of material fact. FED.R.CIV.P. 56(c); *Celotex*, 477 U.S. at 322.  A material issue of fact is only "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, Defendant must come forward with significant evidence and "must do more than simply show that there is some metaphysical doubt as to the" merits of T-Mobile's claims. *Id.* at 586.

Furthermore, to overcome summary judgment Defendant must submit evidence demonstrating that a genuine issue of material fact does exist.  Defendant cannot merely rely upon allegations, assumptions or speculations, which are legally insufficient to overcome a Motion for Summary Judgment. *See Matsushita*, 475 U.S. at 585-89, *Celotex*, 477 U.S. at 325.

An issue cannot be genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" but "not significantly probative." *Anderson*, 477 U.S. at 249-50.

For a transferred case, such as this one, "[a]fter a transfer pursuant to 28 U.S.C. § 1404(a), the transferee district court generally must apply the state law that the transferor district court would have applied had the case not been transferred." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.")); *see also Eckstein v. Balcor Film Investors,* 8 F.3d 1121 (7th Cir. 1993) (same).

## ANALYSIS

### A.        Defendant has Violated the Lanham Act and Related State Law Claims

To prevail on its trademark infringement claims, T-Mobile must prove: (1) it has rights senior to Defendant in the T-Mobile Marks; and (2) there is a likelihood of confusion between the T-Mobile Marks and Defendant's marks as used or intended to be used in the marketplace. *Goto.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999).

With regard to the first element, the Court finds that T-Mobile has been assigned the right to use and enforce the T-Mobile Marks by its parent company, Deutsche Telekom AG; T-Mobile uses the T-Mobile Marks on and in connection with telecommunications services, including on SIM cards and Prepaid Phones; and  Defendant does not have rights to use the T-Mobile Marks and his unauthorized use of the T-Mobile Marks began after T-Mobile's use.

With regard to the second element, the Ninth Circuit assesses a likelihood of confusion with reference to the eight (8) factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), often called the *Sleekcraft* factors.  These factors include: (1) the similarity of the marks; (2) the relatedness of the two companies' goods/services; (3) the marketing channel used; (4) the strength of the Plaintiff's mark; (5) the Defendant's intent in selecting his mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *Sleekcraft*, 599 F.2d at 348-49.  "This list of factors, while perhaps

exhausting, is neither exhaustive nor exclusive.  Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion.  The presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion."  *E. & J. Gallow Winery v. Gallow Cattle Co.*, 967 F.2d 1280, 1290-91 (9th Cir. 1992).  Courts have noted that the first three *Sleekcraft* factors are often controlling of the likelihood of confusion analysis.  *Goto.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ("This trinity constitutes the most crucial body of the *Sleekcraft* analysis.").  By addressing these factors, the totality of the evidence compels the Court to hold as a matter of law that likelihood of confusion exists.

The undisputed evidence demonstrates that T-Mobile and Defendant sell identical-looking, directly-competing products and services to the same purchasers—individuals looking for affordable, high quality T-Mobile wireless telephones and service—through the same channels of trade, utilizing the same advertising vehicles.  Therefore, the trinity factors favor confusion.  *Goto.com,* 202 F.3d at 1207 ("This trinity constitutes the most crucial body of the *Sleekcraft* analysis.").  Furthermore, there have already been several instances of documented actual confusion, which "is the best evidence of likelihood of confusion."  *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1213 (W.D. Wash. 2003).  Indeed, at least three customers contacted T-Mobile to complain about the "T-Mobile service" they received from Mr. Collett.  George Collett's store and the service plans he offered to these customers were not sanctioned by T-Mobile in any way.

There can be no dispute that the T-Mobile Marks are strong marks.  They are well known and established to customers and the trade as symbols identifying and distinguishing T-Mobile's products and services, and signifying distinctive products and services of exceptional quality. Moreover, Defendant's bad faith intent to misappropriate the T-Mobile Marks and to trade on Plaintiff's established goodwill is further evidence of the likelihood that additional consumers have been and will be confused.

The undisputed facts demonstrate that Defendant used the T-Mobile Marks without permission.  The Court finds that Defendant is not, and has never been, an authorized sales agent of

T-Mobile products and services with permission to use the T-Mobile Marks.   Accordingly, Defendant is committing trademark infringement and summary judgment is granted to T-Mobile on this claim.

Defendant is also violating the Lanham Act through his false advertising.  Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) makes it unlawful for "[a]ny person who…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).  To succeed on its false advertising claim, T-Mobile must show:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Nat'l Products, Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010) (citing *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997)).  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.*

Defendant falsely advertised and promoted through interstate commerce that he was an authorized T-Mobile dealer selling genuine T-Mobile products and services.  Mr. Collett testified that he sold T-Mobile Phones and SIM cards on eBay and Craigslist, purchased T-Mobile SIM cards, pin numbers and activation codes, posted a sign in his store saying "unlimited T-Mobile service $50 a month" and advertised that he was a T-Mobile dealer. Defendant also improperly advertised his store as a T-Mobile store with an unlimited T-Mobile service plan for $45 per month without a credit check.  These representations were false, as the Court finds that George Collett's store and the T-Mobile products and service plans he offered were not sanctioned by T-Mobile in any way.

Defendant's false advertising deceived consumers, as evidenced by them calling T-Mobile regarding the service they purchased from Defendant.  It is undeniable that Defendant's advertisements misrepresent the nature, characteristics, and/or qualities of Defendant's infringing products.  Defendant's false and deceptive advertising on the internet and otherwise has a material effect on purchasing decisions, affects interstate commerce, and continues to cause irreparable harm to T-Mobile including, but not limited to, direct diversion of sales from T-Mobile to Defendant and by lessening the goodwill associated with T-Mobile's products and services.  *Id.*; *see also Nat'l Products,* 699 F. Supp. 2d at 1237.  Therefore, summary judgment is granted in T-Mobile's favor on its false advertising claim.

Because T-Mobile has successfully established its trademark infringement claim, its deceptive trade practices and unfair competition claims under Georgia state law must also succeed.  *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 n.14 (11th Cir. 1983) (test for deceptive trade practice and unfair competition under Georgia law same as test for false designation of origin under Lanham Act).

In sum, T-Mobile has established that there are no disputed facts regarding its trademark infringement, false advertising, unfair competition, and deceptive trade practices claims and, that it is entitled to summary judgment on these claims.

**B.       Defendant Violated the Computer Fraud and Abuse Act ("CFAA")**

To prevail on a claim under 18 U.S.C. § 1030(a)(4) of the CFAA, T-Mobile must establish that Defendant: (1) knowingly and with intent to defraud;[1] (2) accessed a protected computer without authorization; (3) obtained anything of value; and (4) caused a loss and damages aggregating at least $5,000.  *See* 18 U.S.C. §§ 1030(a)(4), 1030(c)(4)(A)(i)(I), 1030(g).

T-Mobile's wireless telecommunications network as well as its proprietary computer system for activations are each a "protected computer" as defined in 18 U.S.C. §§ 1030(e)(2).

---

[1] "Intent to defraud" under Section 1030(a)(4) "simply means wrongdoing…" whereby "the defendant participated in dishonest methods to obtain the plaintiff's secret information."  *Shurguard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.,* 119 F.Supp.2d 1121, 1126 (W.D. Wash. 2000); *see also U.S. v. Willis,* 476 F.3d 1121 (10th Cir. 2007); *eBay Inc. v. Digital Point Solutions, Inc.,* 608 F.Supp.2d 1156 (N.D. Cal. 2009) (fraud under the CFAA only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act).

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 9

Defendant with the assistance of his co-conspirators systematically accessed T-Mobile's protected computers, without authorization, in at least two separate ways.  First, Defendant used improperly obtained confidential T-Mobile activation codes to access T-Mobile's proprietary computer system to activate bulk quantities of SIM cards.  Second, after activating the SIM cards, Defendant again improperly accessed a T-Mobile computer system by using the (now counterfeit) SIM cards to access T-Mobile's computer-based wireless telecommunications network to obtain stolen mobile airtime and services from T-Mobile.[2]  Defendant then sold this stolen airtime (which he obtained for free) to unwitting consumers who believed he was an authorized T-Mobile dealer.

T-Mobile has suffered the requisite "loss"[3] and "damage"[4] as defined under the CFAA.  As the *Shurguard* court noted, the "word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state," and when a defendant "infiltrated the plaintiff's computer network…and collected and disseminated confidential information [even if] no data was physically changed or erase…, an impairment of its integrity occurred." *Shurguard*, 119 F.Supp.2d 1126-27.

Defendant's actions have substantially harmed T-Mobile by, among other things: defrauding T-Mobile out of airtime and related services disrupting T-Mobile's profitable relationships with its dealers and customers, causing T-Mobile to incur the cost of investigating and remedying the breaches and paying third-party carriers for roaming and overseas calls made on the SIM card, diluting the T-Mobile Marks, depriving it of the means to control the quality of its product, harming T-Mobile's business reputation and goodwill and leading to a greater likelihood of confusion, mistake, and deception as to the source of origin of T-Mobile products, and depriving T-Mobile of the opportunity to earn profits by providing wireless service to legitimate T-Mobile consumers.

---

[2] T-Mobile's proprietary activation computer system and its wireless telecommunications network both constitute a "protected computer" for purposes of the CFAA, as defined at 18 U.S.C. § 1030(e)(2)(B). *See United States v. Trotter*, 478 F.3d 918, 920-22 (8th Cir. 2007) (company's computer network is a "protected computer" under the statute).

[3] According to the statute, "loss" includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, systems, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service." *See* 18 U.S.C. § 1030(e)(11).

[4] The term "damage" is defined in the statute to mean "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. § 1030(e)(8).

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 10

The Court further finds that T-Mobile has spent in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless network, conducting a damage assessment regarding Defendant's collection and dissemination of dealer codes, SIM cards, and wireless airtime, and tracking down and deactivating improperly-activated SIM cards.

Defendant is also violating 18 U.S.C. §§ 1030(a)(2)(C) and 1030(a)(5)(C).  Under 18 U.S.C. § 1030(a)(2)(C) it is unlawful to intentionally access a protected computer without authorization and thereby obtain information from the protected computer.  Section 1030(a)(5)(C) makes it unlawful to intentionally access a protected computer without authorization and cause damage and loss.  For the reasons discussed above, Defendant has intentionally accessed T-Mobile's protected computers without authorization.  By accessing the T-Mobile proprietary database, Defendant obtained information that allowed him to activate the SIM cards, and gain access to T-Mobile's wireless network to obtain "free" airtime and stolen services from T-Mobile. T-Mobile suffered loss and was damaged in the process, as set forth above.

Defendant is also violating Section 1030(a)(6) of the CFAA.  A claim under 18 U.S.C. § 1030(a)(6) requires the following elements: (1) the Defendant knowingly; (2) trafficked in; (3) a computer password; (4) in a manner that affects interstate commerce.  *See* 18 U.S.C. §§ 1030(a)(6); 1030(c)(4)(A)(i)(I); 1030(g).  Defendant and his co-conspirators are doing exactly that—they trafficked in T-Mobile's confidential pass-codes that access its proprietary computer systems.  Defendant also has bought and sold counterfeit and illegally-activated SIM cards to consumers.  These illegally-activated SIM cards operate as a gateway (or computer password) to T-Mobile's nationwide wireless telecommunications network.

Defendant has violated the CFAA and summary judgment is granted in T-Mobile's favor on its CFAA claims.

C.    **Defendant Violated the Georgia Computer Systems Protection Act**

Georgia Statute § 16-9-93 provides civil remedies for those engaging in computer theft, computer trespass, and computer password disclosure.[5]

Defendant repeatedly committed computer theft, computer trespass and computer password disclosure by illegally accessing T-Mobile's computers and advertising, using, and selling codes that allow the user to access T-Mobile's computers to acquire airtime and services without remuneration to T-Mobile.  Accordingly, Defendant violated the Georgia Computer Systems Protection Act, and summary judgment is granted in Plaintiff's favor with respect to this claim.

D.    **Defendant's Unlawful Activities are Part of an Illegal Conspiracy**

To prove conspiracy, T-Mobile "must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." *Tyler v. Thompson*, 308 Ga.App. 221, 224-225; 707 S.E.2d 137, 141 (Ga. Ct. App. 2011) (internal quotations omitted).   Mr. Collett admits that he affirmatively worked with Defendants Custom Access, Inc. and Sherman Terry to engage in a variety of tortious conduct, including, but not limited to, trademark infringement, false advertising, computer fraud, computer theft, computer trespass, and computer password disclosure.   Participation by unauthorized persons like Mr. Collett in buying and selling large quantities of T-Mobile SIM cards or new T-Mobile handsets

---

[5] O.C.G.A. § 16-9-93 states in pertinent part:
(a) *Computer Theft.* Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of:
    (1) Taking or appropriating any property of another, whether or not with the intention of depriving the owner of possession;
    (2) Obtaining property by any deceitful means or artful practice; or
    (3) Converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property…shall be guilty of the crime of computer theft.
(b) *Computer Trespass.* Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of:
    (1) Deleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network;
    (2) Obstructing, interrupting, or in any way interfering with the use of a computer program or data; or
    (3) Altering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program, regardless of how long the alteration, damage, or malfunction persists… shall be guilty of the crime of computer trespass….
(e) *Computer Password Disclosure.* Any person who discloses a number, code, password, or other means of access to a computer or computer network knowing that such disclosure is without authority and which results in damages (including the fair market value of any services used and victim expenditure) to the owner of the computer or computer network in excess of $500.00 shall be guilty of the crime of computer password disclosure.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 12

constitutes a requisite act in furtherance of the conspiracy.  Indeed, Mr. Collett admits to being a dealer for Custom Access and working with Sherman Terry to activate T-Mobile SIM cards on T-Mobile's wireless network.  Furthermore, Mr. Terry admitted that he was using stolen dealer codes to fraudulently access T-Mobile's computers to improperly activate customer accounts.  Based on the foregoing undisputed evidence, summary judgment in T-Mobile's favor on this claim is appropriate.  *Tyler*, 308 Ga.App. at 224-225; 707 S.E.2d at 141.

## **RELIEF**

### A.      **Permanent Injunction**

On August 3, 2011, a preliminary injunction was entered against Defendant.  (Dkt #82).  T-Mobile now seeks to make this injunction permanent based on Defendant's numerous violations of the Lanham Act and CFAA.  T-Mobile is entitled to a permanent injunction because: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate T-Mobile's injuries; (3) considering the balance of hardships between T-Mobile and Defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange LLC,* 547 U.S. 388, 390 (2006); *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1137 n.11 (9th Cir. 2006).  Moreover, once infringement is shown, irreparable injury is generally presumed in a trademark case.  *See Abercrombie & Fitch Co. v. Moose Creek, Inc.,* 486 F.3d 629, 633 (9th Cir. 2007); ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989).

Even without the legal presumptions afforded it by the law of this Circuit, T-Mobile will be irreparably harmed because Defendant's actions, if allowed to persist, will continue to cause T-Mobile to suffer harm to its business reputation and dilution of the T-Mobile Marks as Defendant introduces more and more infringing products and services into the marketplace.  Moreover, the actual irreparable harm that T-Mobile has suffered will worsen over time if Defendant is not

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 13

permanently enjoined by the Court. Defendant could sell T-Mobile's confidential and proprietary codes, SIM cards and Phones throughout the world, making it virtually impossible for T-Mobile to retrieve the infringing products, thereby causing T-Mobile further irreparable harm.

When these infringing products (which are advertised using the T-Mobile trademarks) fail to meet the expectations of consumers, such as when they stop working, the consumers will devalue T-Mobile's brand and products. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and therefore is an appropriate basis for injunctive relief."). Absent permanent injunctive relief, T-Mobile would be forced to repeatedly file suit any time Defendant infringes its trademark rights in the future. *See Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the multiplicity of suits necessary to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity"). This is particularly salient here, where Defendant has already demonstrated an unwillingness to stop advertising and selling T-Mobile products even after this suit was filed, a preliminary injunction was issued, and an order of contempt for violating the injunction entered. Permanent injunctive relief is the only adequate remedy to prevent the continued threat of infringement.

Furthermore, the balance of hardships weighs strongly in T-Mobile's favor. Defendant has no legitimate interest in holding himself out as an authorized T-Mobile dealer, when he is not, or in selling hacked SIM cards and Phones with T-Mobile Marks when, in fact, those SIM cards and Phones are not genuine T-Mobile products. Defendant has no legitimate interest in using and selling T-Mobile's proprietary codes. Defendant's business is not maintained solely through the use and sale of T-Mobile proprietary codes and counterfeit T-Mobile SIM cards and Phones. He can continue to conduct business in the telecommunications industry, buying and selling other products and services.

T-Mobile, on the other hand, is threatened with irreparable injury if an injunction is not issued. The continued use and sale of proprietary codes and counterfeit SIM cards and Phones

1    that contain the T-Mobile Marks, but no longer conform to T-Mobile's specifications and do not

2    operate as advertised on the T-Mobile wireless network, poses a substantial threat to T-Mobile's

3    business reputation.  Additionally, by Defendant holding himself out as an authorized T-Mobile

4    dealer, who is providing illicit and defective products to customers, he is irreparably harming T-

5    Mobile's reputation.    Defendant's continued violations of the Preliminary Injunction

6    demonstrate that he is unable to advertise and lawfully sell T-Mobile products and services.  His

7    actions threaten to irreparably damage T-Mobile's hard-earned business reputation as a provider

8    of quality wireless service dedicated to customer service.

9           Furthermore, the monetary benefits that Defendant receives from his actions are not

10   benefits to be protected.  *Ty, Inc. v. GMA Accessories, Inc.*, 959 F.Supp. 936, 945 (N.D. Ill.

11   1997) ("Loss of profits from infringing products warrant little consideration in the balancing of

12   harms analysis.").  Defendant should not consider it a burden to follow the law by not infringing

13   T-Mobile's trademark rights, fraudulently holding himself out as a legitimate T-Mobile dealer,

14   and hacking into its computer systems.  *See S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371,

15   375 (3d Cir. 1992) (infringer's "self-inflicted harm is far outweighed by the immeasurable

16   damage done Jiffy Lube by the infringement of its trademark"); *Burger King Corp. v. Majeef*,

17   805 F.Supp. 994, 1006 (S.D. Fla. 1992) (same).

18          Finally, the public interest will not be disserved by the issuance of a permanent injunction.

19   On the contrary, the permanent injunction will benefit the public by preventing likelihood of

20   confusion to consumers.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, No. 10-1384, 2011 WL

21   3625382, *30 (C.D. Cal. Aug. 16, 2011) (granting permanent injunction for defendant's infringing

22   conduct); *see also Competition Specialties, Inc. v. Competition Specialties, Inc.*, 87 Fed.Appx. 38,

23   42 (9th Cir. 2004) (upholding district court's entry of a permanent injunction under the Lanham

24   Act); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 933, 937-38 (9th Cir. 2004)

25   (upholding district court's entry of a permanent injunction for defendant's violations of the CFAA).

26          For these reasons, the Court enters a permanent injunction as further detailed below.

27

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 15

1

**B.      Monetary Damages**

2          Damages under the Lanham Act include "(1) defendant's profits; (2) any damages

3   sustained by the plaintiff, and (3) the costs of the action."  15 USC §1117(a).  Further the

4   Lanham Act provides for enhanced damages of up to three times the amount of actual damages.

5   *Id.*  Under the CFAA, T-Mobile is entitled to recover its compensatory damages.  *See* 18 U.S.C.

6   § 1030(g).  Damages under the Georgia Computer Systems Protection Act "shall include loss of

7   profits and victim expenditure."  Ga. Code Ann., § 16-9-93(g)(1).  When a conspiracy exists, as

8   it does here, "members of the conspiracy are jointly and severally liable for acts of co-

9   conspirators done in furtherance of the conspiracy."  *Tyler v. Thompson*, 308 Ga. App. 221,

10  225; 707 S.E.2d 137, 141 (Ga. Ct. App. 2011).

11         T-Mobile has established that Defendant and his co-conspirators, including Sherman

12  Terry and Custom Access, Inc., collectively activated at least 824 fraudulent prepaid accounts and

13  104 fraudulent business accounts.  *See Tyler*, 308 Ga. App. at 225; 707 S.E.2d at 141 ("After the

14  conspiracy is formed, members of the conspiracy are jointly and severally liable for acts of co-

15  conspirators done in furtherance of the conspiracy."); *Cook v. Robinson*, 216 Ga. 328, 329; 116

16  S.E.2d 742, 745 (Ga. 1960) ("where a cause of action is alleged, the fact of conspiracy, if proved,

17  makes any actionable deed by one of the conspirators chargeable to all….The liability is joint and

18  several.").   T-Mobile submitted evidence that for each line that is fraudulently activated, T-

19  Mobile suffers at least $106 in lost revenue.  Therefore, the Court awards T-Mobile lost revenues

20  in the amount of $98,368.00 for Defendant's unlawful activations.

21         In addition, T-Mobile established that it expended over $18,125.88 in investigating

22  Defendant and taking corrective measures to prevent further fraudulent conduct, excluding

23  litigation costs or attorneys' fees.  T-Mobile is entitled to actual damages in the amount of

24  $116,493.88.  As a result of Defendant's willful conduct as described above, the Court finds it

25  proper to treble T-Mobile's award of actual damages.  Therefore, the Court awards T-Mobile

26  $349,481.64 in damages.  *See* 15 USC §1117(a).

27

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 16

C.      Attorneys' Fees

The Lanham Act also gives the Court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003). Here, Defendant's entire business model is predicated on the unauthorized and willful exploitation of the T-Mobile Marks. His misappropriation of the T-Mobile Marks gives him a special advantage in competition against T-Mobile, as he sells infringing T-Mobile products and services for significantly less than T-Mobile and offers rates and plans that do not exist for genuine T-Mobile products and services. This constitutes "deliberate and willful" behavior sufficient to merit an award of attorneys' fees under the Lanham Act.

In addition, a case may be deemed "exceptional" and merit an award of attorneys' fees under the Lanham Act when the Defendant disregards legal proceedings. *See Lien v. Compusoft of Kalamazoo, Inc.*, 1991 WL 641575, *5 (W.D. Mich. 1991) (defendant's lack of cooperation and disrespect for the judicial process constituted exceptional circumstances warranting an award of attorneys' fees); *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (same). The Court finds that Defendant refused to cooperate in discovery, repeatedly violated Court Orders and continued to violate the Preliminary Injunction. The Court finds that under both definitions this is an exceptional case and T-Mobile is entitled to an award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment Against George Collett.

1.      Final judgment is hereby entered against Defendant George Collett and in favor of the Plaintiff T-Mobile USA, Inc., on T-Mobile's Federal Trademark Infringement and False Advertising (Count One), Trafficking in Computer Passwords (Count Three), Unauthorized Access With Intent to Defraud (Count Four), Theft of Computer Data (Count Five),

Unauthorized Access (Count Six), Unfair Competition, O.C.G.A. §23-2-55 (Count Eight), Civil Conspiracy (Count Nine), Georgia Computer Systems Protection Act, O.C.G.A. §16-9-93 (Count Thirteen), and Deceptive Trade Practices, O.C.G.A. §10-1-372 (Count Fourteen) claims.

2.    Plaintiff, T-Mobile USA, Inc. is awarded damages in the principal amount of Three Hundred and Forty-Nine Thousand, Four Hundred and Eighty-One Dollars and Sixty-Four Cents ($349,481.64) for monetary and exemplary damages against Defendant George Collett, which shall bear interest at the legal rate, for which let execution issue forthwith.

3.    Defendant George Collett, and each of his respective partners, agents, representatives, employees, servants, heirs, personal representatives, beneficiaries, relatives, contractors, companies, corporations, including, but not limited to, Cell Phone George Inc., and each and all of their respective  past and present officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, representatives, and employees, and all other persons acting on behalf of or for the benefit of Defendant or who are in active concert or participation with Defendant, including but not limited to any corporation, partnership, association, proprietorship or entity of any type that is in any way affiliated or associated with Defendant or Defendant's representatives, agents, assigns, employees, servants, affiliated entities, and any and all persons and entities in active concert and participation with Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

      a.    purchasing, selling, providing, altering, advertising, soliciting, using, and/or shipping, directly or indirectly, any T-Mobile "Activation Materials," which consist of SIM cards, PIN numbers, activation and proprietary codes, and/or other mechanism, process or materials used to activate service or acquire airtime in connection with an activation on the T-Mobile network;

      b.    purchasing, selling, unlocking, reflashing, altering, advertising, soliciting, using, and/or shipping, directly or indirectly, any T-Mobile products or services;

      c.    purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any Activation Materials or T-

Mobile mobile device that Defendants know or should know bears any T-Mobile marks or any marks likely to cause confusion with the T-Mobile marks, or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future;

d.    accessing, directly or indirectly, personally or through an agent or associate, any of T-Mobile's internal computers or computer systems;

e.    accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any T-Mobile mobile device;

f.    supplying T-Mobile Activation Materials or mobile device(s) to or facilitating or assisting in any way other persons or entities who Defendants know or should know are engaged in selling SIM cards, Activation Materials, and/or methods or processes to defraud T-Mobile or are unlocking T-Mobile mobile device and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in T-Mobile mobile device(s);

g.    supplying T-Mobile Activation Materials or devices to or facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of T-Mobile Activation Materials or mobile device; and

h.    using the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future, or that is likely to cause confusion with T-Mobile's marks, without T-Mobile's prior written authorization.

4.    The purchase, sale, trafficking, use, or shipment of any T-Mobile mobile device, SIM card, accessory, or Activation Material without T-Mobile's prior written consent within and/or outside of the continental United States is and shall be deemed a presumptive violation of this permanent injunction.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 19

5.      Pursuant to the Lanham Act, Defendant shall deliver and turn over all T-Mobile SIM cards, handsets, and products in his possession, or subject to his custody or control, bearing or infringing on any T-Mobile trademark or a confusingly similar copy thereof, to T-Mobile within 10 days of the date of this Final Judgment.

6.      T-Mobile is awarded its attorneys' fees and costs incurred as a result of this action, in the amount of $182,221.34, in accordance with the amounts set forth in the declarations of T-Mobile's counsel James Baldinger and James Grant, which this Court finds reasonable.

7.      The address of George Collett is 510 South 112th Street, Tacoma, WA 98444.

8.      The address of Plaintiff, T-Mobile USA, Inc., is 12920 S.E. 38th Street, Bellevue, Washington  98006.

9.      The Court retains jurisdiction over this matter and the parties to this action to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to T-Mobile in an amount of $5,000 for each T-Mobile prepaid handset, accessory, or item of Activation Material that Defendant is found to have purchased, sold, advertised, activated, used, provided or unlocked in violation of this Injunction.  The Court finds that these amounts are compensatory and will serve to compensate T-Mobile for its losses in the event any Defendant violates the terms of this Order.

10.     The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendant as set forth herein.

11.     This case will remain open with respect to the other Defendants and the other claims T-Mobile has brought against Defendant George Collett.

DONE AND ORDERED, this 23rd day of April, 2012.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Counsel of Record and pro se parties

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND ENTERING PERMANENT INJUNCTION
AGAINST DEFENDANT GEORGE COLLETT
(3:11-cv-5655-RBL) — 20